Good morning, your honors. Vinay Chari for the petitioner. This case boils down to the agency's credibility finding and whether it was appropriate for the I.J. to consider the asylum officer's notes in arriving at that finding without actually getting any testimony from the officer. The I.J. acknowledged that those notes, that the asylum officer's notes were very confusing, but nevertheless admitted, admitted them and said that she would basically accord them what weight she thought they deserved. And she offered an explanation in her decision of how she weighted the, or how she approached those notes. She said that she didn't give much weight to inconsistencies where, that weren't clear from the notes or that seemed to her might have been a result of a misunderstanding on the part of the asylum officer or a result of misunderstanding the notes themselves. I want to obviously, you know, we certainly had this discussion in the previous case, but what authority is there in our circuit or elsewhere about the ability of an I.J. to use assessment notes solely for the purpose of observing the demeanor of the witness, not necessarily for the truthfulness of the assessment notes? So, for example, if it says, the assessment notes say that I was married to Susie Q. And he's testified, I'm married to Josephine. And the assessment officer, I mean the I.J. says, well, didn't you say that you were married to Susie Q? And he gets a big, surprised look on his face and he suggests that he's not saying something truthfully. What's the matter with that? Oh, well, to be honest, I'm not sure. I'm not sure what, whether there's case law on that particular issue or what it is. But I'm not sure that that's pertinent to this case because I don't, because she used the, she used those asylum officer's notes for more than that. She used them as counterpoints. I understand incrementally what they can be used for. So it sounds to me like for that purpose, there's probably no case law, at least that you're aware of. I'm not aware of any. So I guess the question is, can the assessment officer's notes be used as evidence for the truth? In essence, here, I would say basically an admission against interest, something of that nature. That's what you're arguing against, right? Somewhat, Your Honor. Well, I think the baseline is whether the admission, the evidence is, whether the evidence is probative and its admission is fundamentally fair. And in this case, I don't think that the, that those notes were clear enough to be probative without testimony from the asylum officer. And hence, I don't think. Handwriting or clear enough in the sense of the cogency of the remarks? Both, actually, Your Honor. I don't think it's, it's certainly, I don't think it pretends to be, but it's certainly not a verbatim transcript of what went on at the asylum office. I don't, lots of times questions are written in a shorthand, which is, which kind of, which makes it unclear precisely what was asked. And lots of times in, in determining whether someone, someone's response at one time is inconsistent with their response to the, you know, at another interview seven years back, lots of times the answer may lie in, in kind of the nuances of how a question is asked. And I think a lot of that was pretty much, was missed in the asylum officer's notes. Was the, were the notes provided to your client before the hearing? No, they were provided at the 11th hour, pretty late in the hearing. I think you can actually see the moment at which they're provided there. When the hearing had actually begun, you mean? I'm sorry? When the hearing had actually begun. Yeah, they were, they were produced after, they were produced once the hearing had begun and when it was mostly, when it was probably three-quarters of the way through, I think around page 108 of the record is where you see where they were admitted. That's admitted, but I mean, were they turned over before then at all to the trial counsel? Not that I'm aware of, Your Honor. Like I said, the judge, the judge tried to, oh, if, this is a little late in the game, but if I could save two minutes to rebut. Okay. The, the judge tried to explain how she weighted them and basically where she perceived that there might have been misunderstandings of the, by the asylum officer or the notes might be susceptible to being misunderstood. She, she didn't really consider those, she really don't, didn't consider those inconsistencies. But I think it kind of, that, her explanation kind of illustrates the hazards of admitting this at all without the, without the testimony of the officer. Which credibility findings that, that the IJ made, do you ascribe to inconsistencies between the assessment report of the asylum officer and what was said at the hearing as opposed to other findings? Well, I guess it would be what she, the inconsistencies that she found. One significant one regards my client's testimony regarding why he was arrested in 1989. The IJ, he, he testified that he was basically arrested after attending a rally at hearing. The IJ found that to be inconsistent with testimony offered or that he, testimony that he offered the asylum office. But I don't think, I think it's ambiguous at best and contradictory at worst if you look at the, if you look at the asylum officer's notes. That's one. Yeah, that's one. And another one is the circumstances of his 1996 arrest. The, my, my client had testified that, that he was arrested after seeking his son's, his son's release from police custody. The judge found that he, this is a, and this is quite a detailed finding for such sketchy notes. The judge found that he, that, that he had first testified that he'd been at the asylum office, that he'd been arrested under different circumstances, but then later on changed that testimony to reflect something quite consistent with what he testified at the hearing, which was that he was arrested when he was seeking his son's release. But once again, if you look at the, if you look at those, those notes, it actually appears that in two different places, it's, the asylum officer appears to have recorded that he said his son was arrested in 1996. And the first of those instances is before the, the account of the arrest that, that, that the IJ found to be contradictory with his testimony. And I know this isn't a question of two out of three, but I think it highlights, it, it highlights the lack of clarity in those notes. And this, this is. As I, as I understand it from, from my review, there are at least seven findings. You've mentioned two. So that leaves five where at least allegedly there is substantial evidence. Okay. So how does that help you? Well, well, I think, well, there's still others, others appear. Regarding that, going back to that 1989 arrest, there was a question as to whether someone was arrested with him. He said, he said that he, in his testimony, he didn't indicate that anyone was arrested with him during that 1989 arrest. The IJ found that to be contradictory with his testimony in which he, she, she read those notes to indicate that my client had said he was arrested along with a gentleman named Jian Singh at his, at hearing. But if you actually read the, the asylum officer's note there, it reads, also took person W slash me, with me, dash from village, dash Jian Singh. I think the reasonable way to read that is that someone else from his village was arrested at the same time that he was arrested and that they were ultimately transported away together. Not that they, not that this gentleman, Jian Singh, was with him when he was arrested. Okay. You wanted to save money. Certainly, certainly. Before your rebuttal. Certainly. Very good. So we'll now hear from Ms. Sherman again from the government. Good morning. Mr. Singh has failed to demonstrate that the record compels a finding that he's credible. The record evidence in this case amply supports adverse credibility determination because there are inconsistencies and omissions surrounding almost every basis for his alleged past persecution. Ms. Sherman, it seems like the big issue, at least in, as they're alleging, is the use of these assessment notes by the asylum officer. What, is there any authority, either in this circuit or elsewhere, that details the way in which these notes can be properly used for cross-examination? Well, I think that this Court's decision in Singh, which we've discussed this morning, sets forth some of the Court's concerns with the use of these notes, and the situations that were identified by the Court in that case are not present here, or many of those situations are not present. For example, in Singh, the Court faulted the immigration judge for making one, albeit imprecise, reference to the assessment to refer. Here, when you read the transcript, the immigration judge consistently, or in the DHS attorney, consistently cited to the assessment to refer in the asylum officer's notes and gave Singh an opportunity to respond to that. Also... So in this case, from the government's perspective, unlike a situation where the DHS brings these forward, there's really no commentary, and then when the order comes out, the judge is repeatedly referring to it. Here, as I understand your position, the DHS raises the point. The IJ asks Mr. Singh whether he has any response to, or rebuttal, if you will, to what the DHS characterizes as the position of the asylum officer. Is that accurate? That's correct. And I think it's important to note that Petitioner is now alleging that the notes were not given to him in advance, but the record shows they were admitted a year prior to his hearing. They were marked as an exhibit. Where would we find that? The notice of intent to deny is on page, I believe, 127, I want to say. Let me... Okay. On page 123, it was marked as an exhibit on January 5, 2004. It also shows it was mailed to Mr. Singh on June 10, 1997. Now, Mr. Singh's hearing wasn't until January 5, 2005, an entire year after these were admitted as evidence. So it's, I think, disingenuous to say that he never received these notes or had an opportunity to review them. And that was another issue in Singh, in the Singh case, where the Court was concerned that the alien did not have an opportunity to review the notes before they were used to find him not credible. Again, in Singh, the Court was very concerned with the fact that the alien was not confronted with the inconsistencies during his hearing. And in the transcript in this case, it's abundantly clear that he was consistently shown every inconsistency and given an opportunity to respond, and every single time he said, I don't know why it's inconsistent or I don't remember. And that finding certainly does not compel determination that he was credible. He was also examined on his asylum application, his sworn declaration. Is that it? Correct. Unlike Singh, this case, there were other inconsistencies and omissions that were not based on the asylum officer's notes. First of all, the immigration judge noted that he provided no corroboration of any kind, and Petitioner did not challenge that finding to the Board, and so it is unexhausted. The immigration judge also noted that he testified with little detail and specificity and that it appeared as though he was reading a script. Again, he doesn't challenge that finding, and that's not based on the asylum officer's notes. The immigration judge also noted that the 1990 arrest, he could not remember whether his son was arrested with him. He testified that his son was only arrested once in 1996. However, in his written asylum application, which he has never challenged the use of, he stated that his son was arrested with him in 1990, in addition to the 1996 arrest. And when he was confronted with this inconsistency, Mr. Singh could not remember why he didn't state in his written asylum application that his son was with him in 1990. He also testified that he was arrested once in 1995 and held overnight in prison. However, this incident was not mentioned in his written asylum application either. And one of the larger inconsistencies was that in his written asylum application, he claimed that he organized the rallies for this political party. However, he testified that he's not even a member of a political party in India and merely participated in one rally. So those inconsistencies and omissions alone and other credibility concerns amply support the adverse credibility determination before we even get to the asylum officer's notes. Now, the asylum officer... I have a quick question for you. Is Mr. Bassi involved in this case in any way? Not to my knowledge. Okay, all right. You never know where he's going to show up, so... The asylum officer's notes also, I mean, the immigration judge also relied on the asylum officer's notes. And before admitting them into evidence and relying on them, the immigration judge did note that at points they were unclear. However, accorded them the weight that was due based on the way they were written. And if we look at the actual inconsistencies relied on by the immigration judge, those were clear in the record. And when you look at the asylum officer's notes, you can read where these inconsistencies came from. With regard to the 1996 arrest, he told the asylum officer he was arrested at home and taken to the police, but in his testimony and written application, he said he was arrested when he tried to get his son released from prison. Now, the notes in this regard clearly state that he was working on his farm when the police came and told them that they were taking him to the police station and they wanted to arrest his son, but the villagers wouldn't let them. This is different than his testimony that he was arrested when he attempted to get his son released from prison. He later changed his testimony to the asylum officer and said that he was arrested when he attempted to get his son released, but it doesn't change the fact that there's this inconsistency in the record. He also, with regard to that arrest, the asylum officer's notes show that he claimed he was arrested because he was assisting militants. But in his testimony, he stated that he was only accused of helping the militants once in 1990 and claimed in 1996 the arrest was for taking part in a rally. With regard to the 1989 arrest, he told the asylum officer that he was arrested for, because he was a few miles from where an individual was killed by militants. But again, he testified that he was arrested after attending a rally. And these inconsistencies are clear in the record, and so the immigration judge did not err in relying on them. And when he was confronted, he kept saying, I don't remember why these are inconsistent. So he didn't provide any explanation to the court. And the immigration judge asked him specifically, are there any times you did not understand the asylum officer's questions to you? And he provided two instances that's on the record at page 89 and 90, and neither of these instances were a basis for the adverse credibility determination. Mr. Singh also failed to provide any corroboration, even though he claimed that he still speaks to his son on the telephone. So clearly he could have gotten a statement from his son, who was present at one or two of the arrests, and he failed to provide any explanation and even challenge this finding to the agency. Because the immigration judge recognized that there were some concerns with the notes, but only relied on the instances where there were clear inconsistencies in the record, I think that the adverse credibility determination is amply supported. Thank you very much, Your Honors. Thank you. We have a brief time of rebuttal here. First, regarding the contention that the notes were submitted a year in advance, they were not. And I think what's going on, like I said, if you look at the transcript, you can look at page 108 or 109, that's when they came in. And I see the stamp that the government is talking about, where it says January 5, 2004 they were admitted. I think that's just a ‑‑ if you look at the date of that hearing, the date of the hearing was January 5, 2005. I think they just forgot to change the year stamp, if that makes sense. But if you look at the record at page 108, they clearly ‑‑ I have an exhibit here, debate 000123, exhibit 5, January 5, 2004. Exactly. I think ‑‑ The notes are attached to that. Exactly. I think that's just a mistake. I think someone didn't change out the 4 in the stamp to a 5. That kind of stuff happens at the beginning of the year. Because it's January 5th, which is the exact same date as the hearing was. When you look at the transcript, clearly the notes were introduced during the hearing and not ‑‑ certainly not in the year in advance and not even a day in advance. It also indicated there was another time that they were supplied. Sorry, Your Honor? It also indicated there was another date they were supplied as well, right? Mailing, I think, of some kind. Oh, it's possible that the notice of intent to deny was sent to the respondent at his mailing address. But that has nothing to do with the notes, which were the ground of the notice of intent to deny and which the I.J. actually used in arriving at her adverse credibility determination. One thing I would ask the Court to note also is that the judge took pains to note that she wasn't necessarily considering the various inconsistencies she found as standalone grounds for her decision, but rather that she viewed them cumulatively. So I ‑‑ so if the Court is inclined to agree with our brief and our argument on some of these inconsistencies, I think a remand is ‑‑ I think a remand would be warranted on that basis as well. Thank you both for your argument. The case of Singh v. Holder is submitted.
judges: Hogan, Hug, Smith M.